EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs.<br><br>Jorge Marcano Parrilla<br><br>Peticionario | Certiorari<br><br>2006 TSPR 136<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-1999-0178

Fecha: 28 de agosto de 2006

Tribunal de Apelaciones:

       Región Judicial de Caguas, Humacao y Guayama

Juez Ponente:

       Hon. Carlos Soler Aquino

Abogado de la Parte Peticionaria:

       Lcdo. José A. Andréu Fuentes

Oficina del Procurador General:

       Lcda. Mayra J. Serrano Borges
       Procuradora General Auxiliar

Materia: Asesinato en Primer Grado y Ley de Armas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                         CC-1999-178       CERTIORARI

Jorge Marcano Parrilla

    Peticionario

PER CURIAM
(En reconsideración)

San Juan, Puerto Rico, a 28 de agosto de 2006

El 22 de noviembre de 2000, este Tribunal emitió Opinión y Sentencia mayoritaria en el caso de epígrafe.[1] Mediante la referida Opinión se estableció la norma a los efectos de que la prueba requerida para conceder un nuevo juicio, al amparo de las disposiciones de la Regla 192 de Procedimiento Criminal, ha de ser una "exacta y certera, a tal grado que deje clara la inocencia del convicto al punto que la continuación de su encarcelamiento ofenda el sentido de la justicia."[2]

---

[1] Pueblo v. Marcano Parrilla, 152 D.P.R. 557 (2000).

[2] El Juez Asociado Rebollo López emitió Opinión disidente.

Jorge Marcano Parrilla, peticionario en el caso, presentó una moción de reconsideración. En la misma, nos solicita que reconsideremos la referida Opinión y Sentencia. Relacionamos, en apretada síntesis, los hechos que dieron lugar al recurso.

I

Jorge Marcano Parrilla, fue hallado culpable y sentenciado por el Tribunal de Primera Instancia, Sala Superior de Caguas, por la comisión de los delitos de Asesinato en Primer Grado, Artículos 82 al 84 del Código Penal, 33 L.P.R.A. secs. 4001 al 4003[3] y por violaciones a los Artículos 6 y 8 de la Ley de Armas, 25 L.P.R.A. secs. 416 y 418. Luego de apelar su condena ante el Tribunal de Apelaciones y que dicho foro confirmara al foro de instancia, Marcano Parrilla presentó una moción de nuevo juicio al amparo de la Regla 192 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 192. Fundamentó dicha solicitud en el alegado descubrimiento <u>de nueva prueba tendente a demostrar su inocencia</u>.

El tribunal de primera instancia celebró una vista en la cual ambas partes presentaron prueba. Luego de evaluar la misma, el foro primario <u>denegó</u> la moción de nuevo juicio. Al así actuar, razonó que los testigos presentados por la defensa estaban disponibles para la época del juicio

---

[3] Hacemos referencia al derogado Código Penal de 1974.

y que pudieron haber sido traídos por ésta si hubiera actuado con diligencia razonable. Además, concluyó que la nueva prueba presentada no era una tal que disminuyera el valor probatorio de la evidencia presentada en el juicio y que condujo a un veredicto de culpabilidad. Denegada una oportuna moción de reconsideración, Marcano Parrilla acudió en revisión ante el foro apelativo intermedio.

Al confirmar al foro de instancia, el tribunal apelativo expresó que la decisión que emitan los tribunales de instancia, de conceder o no un nuevo juicio, es una que merece deferencia ya que son éstos los que tienen la oportunidad de aquilatar la prueba ante su consideración y de dirimir la credibilidad de los testigos. Además, concluyó el foro apelativo --al igual que el tribunal de instancia-- que los testigos presentados por la defensa estaban disponibles para la fecha del juicio y que pudieron haber sido localizados por la defensa mediante el ejercicio de una diligencia razonable.[4] Añadió dicho foro que, aun en la alternativa, los testimonios ofrecidos por la defensa en su moción de nuevo juicio no derrotaron la credibilidad que mereció la versión de los hechos ofrecida por el testigo principal del ministerio público en el juicio.

---

[4] Estos testigos eran Marcos Roldán Castro, alegado testigo ocular de los hechos e Irma Elisa Orta Fernández, hermana de quien Marcano Parrilla sostiene fue el verdadero asesino. En cuanto a Roldán Castro, al momento del juicio, éste se encontraba en Puerto Rico cumpliendo una probatoria. Por su parte, Orta Fernández residía en el lugar de los hechos y conocía al peticionario de muchos años.

Inconforme con tal determinación, Marcano Parrilla acudió ante este Tribunal vía recurso de *certiorari*. Expedimos el recurso, en etapa de reconsideración, y confirmamos la sentencia dictada por el tribunal apelativo. Al así resolver, este Tribunal analizó la citada Regla 192 y resolvió, repetimos, que la prueba requerida para conceder un nuevo juicio después de dictada la sentencia había de ser una "clara y certera" que deje clara la inocencia del convicto al punto que la continuación de su encarcelamiento ofenda el sentido de justicia.

Aplicada dicha norma al caso, este Tribunal concluyó que además de la falta de diligencia en conseguir los testimonios presentados, la prueba presentada no cumplía con los requisitos establecidos en Pueblo v. Chévere Heredia, 139 D.P.R. 1, (1995), ni con el *quantum* de prueba requerido por la Regla 192.

Oportunamente, Marcano Parrilla presentó ante este Tribunal una moción de reconsideración en la cual argumentó, en síntesis, que el estándar de prueba impuesto en la Opinión mayoritaria para la procedencia de un nuevo juicio atentaba contra el principio de duda razonable y dejaba virtualmente sin efecto la citada Regla 192, al hacer imposible la concesión de un nuevo juicio bajo sus disposiciones. Alegó, además, que la decisión en dicha Opinión adoptaba un concepto de "certeza matemática" en la determinación de la inocencia o culpabilidad de un acusado y le imponía a éste, en una solicitud de nuevo juicio, unos

requisitos mayores para probar su inocencia que los exigidos por el propio Estado para probar la culpabilidad de una persona en un juicio en sus méritos.

El peticionario, además, señaló el hecho de que la norma establecida tendría el efecto de que, salvo en los casos que por evidencia científica pueda exonerarse al acusado, en todos los demás casos nunca existiría tal grado de exactitud y certeza que demostrara la inocencia de una persona. Por último, sostuvo el peticionario que el estándar de prueba para la concesión de un nuevo juicio bajo la Regla 192 tenía que ser uno cónsono con el concepto de duda razonable, de modo que cuando se demostrara que existía nueva evidencia que ponía en entredicho la culpabilidad del acusado "más allá de duda razonable", se le brindara al acusado un nuevo juicio.

Atendido lo expuesto por el peticionario en la moción de reconsideración que radicara, concedimos al Procurador General de Puerto Rico un término de veinte (20) días para mostrar causa por la cual este Tribunal no debía reconsiderar la Opinión emitida. En específico, ordenamos al Procurador que nos ilustrara sobre la corrección o incorrección de la norma establecida en dicho caso.

Examinado el escrito en cumplimiento de orden presentado por el Procurador, y estando en condiciones de resolver la moción de reconsideración presentada, procedemos a así hacerlo.

II

A

Nuestro ordenamiento procesal penal regula la concesión de un nuevo juicio en las Reglas 188 y 192 de Procedimiento Criminal. Ambas disposiciones reglamentarias contemplan la posibilidad de la concesión del mismo bajo el supuesto del descubrimiento de nueva evidencia o nueva prueba.[5]

---

[5] La Regla 188, por su parte, contempla otros supuestos, cuales son que:

(b) Que el veredicto se determinó por suerte o por cualquier otro medio que no fuere expresión verdadera de la opinión del jurado.

(c) Que el veredicto o fallo es contrario a derecho o a la prueba.

(d) Que medió cualquiera de las siguientes circunstancias y como consecuencia se perjudicaron los derechos sustanciales del acusado:

(1) Que el acusado no estuvo presente en cualquier etapa del proceso, salvo lo dispuesto en la Regla 243.

(2) Que el jurado recibió evidencia fuera de sesión, excepto la que resulte de una inspección ocular.

(3) Que los miembros del jurado, después de retirarse a deliberar, se separaron sin el consentimiento del tribunal, o que algún jurado incurrió en conducta impropia, la cual impidió una consideración imparcial y justa del caso.

(4) Que el fiscal incurrió en conducta impropia.

(5) Que el tribunal erró al resolver cualquier cuestión de derecho surgida en el curso del juicio, o instruyó erróneamente al jurado sobre cualquier aspecto legal del caso o se negó erróneamente a dar al jurado una instrucción solicitada por el acusado.

(Continúa . . .)

En lo pertinente al caso ante nuestra consideración, dispone la Regla 188 que, el tribunal concederá un nuevo juicio por, entre otros, el siguiente fundamento:

> (a) Que se ha descubierto <u>nueva prueba</u>, la cual, de haber sido presentada en el juicio, **probablemente habría cambiado el veredicto o fallo del tribunal**, y la que no pudo el acusado con razonable diligencia descubrir y presentar en el juicio. <u>Al solicitar nuevo juicio por este fundamento, el acusado deberá acompañar a su moción la nueva prueba en forma de declaraciones juradas de los testigos que la aducirán.</u> (Énfasis nuestro).

Por su parte, la Regla 192 dispone que:

> También podrá el tribunal, a solicitud del acusado, conceder un nuevo juicio cuando después de dictada la sentencia sobreviniere el conocimiento de **nuevos hechos o de nuevos elementos de prueba de tal naturaleza que evidencien la inocencia del condenado**. (Énfasis nuestro).[6]

La Regla 192 procede del ordenamiento jurídico español, particularmente, del Inciso (4) del Artículo 954

_____

(e) Que no fue posible obtener una transcripción de las notas taquigráficas de los procedimientos, debido a la muerte o incapacidad del taquígrafo o a la pérdida o destrucción de sus notas, ni preparar en sustitución de dicha transcripción una exposición del caso en forma narrativa según se dispone en las Reglas 208 y 209.

(f) El tribunal, además, concederá un nuevo juicio cuando, debido a cualquier otra causa de la cual no fuere responsable el acusado, éste no hubiere tenido un juicio justo e imparcial.

[6] Además, la moción al amparo de esta Regla 192 deberá presentarse dentro de los treinta (30) días siguientes a la fecha en que se toma conocimiento de los nuevos hechos o de los nuevos elementos de prueba. Regla 189 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 189.

de la Ley de Enjuiciamiento Criminal Española.[7] En esencia, el estatuto español establece unas causales en las cuales se permite un _proceso de revisión_ de una sentencia penal que ya ha advenido firme. El Inciso (4) contempla, precisamente, la situación en que, _después de la sentencia_, sobrevenga el conocimiento de nuevos hechos o de nuevos elementos de prueba de tal naturaleza que evidencien la inocencia del acusado. Este recurso de revisión es uno de naturaleza excepcional, pues tiene por objeto la revocación de sentencias firmes, atentando así en contra del principio de cosa juzgada. Su finalidad es una de justicia, puesto que reconoce la preeminencia de la verdad sobre la sentencia firme. Por todo ello, sólo se puede acudir a este remedio procesal en los supuestos establecidos en el Artículo 954. Tribunal Supremo de España, S. de 12 de mayo de 1999, Núm. 8109, Repertorio de Jurisprudencia Aranzadi. Véase también: J. Piqué, J.M. Rifá, L. Saura y J.F. Valls, _Los Procedimientos Penales_, 2da ed., Bosch, Barcelona, 1987, pág. 625.

Sin embargo, más allá de incorporar el texto del Inciso (4) de la mencionada Regla, _no_ incorporamos nada más

---

[7] Dicho Inciso dispone en lo pertinente que:

Habrá lugar al recurso de revisión contra las sentencias firmes en los casos siguientes:
…
4. Cuando después de la sentencia sobrevenga el conocimiento de nuevos hechos de tal naturaleza que evidencien la inocencia del acusado.
5.

del proceso de revisión español[8]. Ello, porque la clara intención de los propulsores de esta disposición fue incorporar a través de la misma el procedimiento del auto de *Coram Nobis*, proveniente el mismo del *common law*.

Así, la Regla 192 concede un remedio de la naturaleza del *Coram Nobis*, <u>pero limitado a la concesión de un nuevo juicio</u>". Cintrón García, <u>Las reglas de procedimiento criminal</u>, Revista de Derecho Puertorriqueño, Universidad Católica de Puerto Rico, Año III Núm. 9 (julio-septiembre 1963), pág. 74.

En igual sentido: "[l]a Regla 174(a) (refiriéndose a la actual Regla 192) autoriza al Tribunal, a solicitud del acusado, a conceder un nuevo juicio cuando después de la sentencia sobrevenga el conocimiento de nuevos hechos o de

---

[8] El procedimiento de revisión español está reglamentado estrictamente por los Artículos 954 a 961 de la Ley de Enjuiciamiento Criminal Española. De acuerdo con el Artículo 957 de la Ley de Enjuiciamiento Criminal Española, el primer paso en el recurso de revisión consiste en la autorización o denegación de la interposición del recurso. Autorizada la interposición, el recurso se sustanciará oyendo por escrito una sola vez al Fiscal y otra a los penados. Luego, el recurso seguirá los trámites establecidos para el recurso de casación. En el caso particular del supuesto cuarto del Artículo 954, "la Sala [Segunda del Tribunal Supremo] instruirá una información supletoria, de la que dará vista al Fiscal, y <u>si en ella resultare evidenciada la inocencia del condenado</u>, se anulará la sentencia y mandará, en su caso, a quien corresponda el conocimiento del delito instruir de nuevo la causa." Artículo 958. Véase M. Fenech, <u>Derecho Procesal Penal</u>, Tomo II, 3era ed., Editorial Labor, 1960, págs. 1209-10. Los nuevos hechos o la nueva prueba presentada, deberán evidenciar la inocencia del acusado de manera exacta, certera y evidente. Tribunal Supremo de España, S. de 11 de marzo de 1994, Núm. 2130, Repertorio de Jurisprudencia Aranzadi.

nuevos elementos de prueba de tal naturaleza que evidencien la inocencia del condenado. Esta facultad del Tribunal no tiene límite de tiempo para su ejercicio aunque la regla no lo dispone en esos términos expresos. La disposición ha sido tomada del Artículo 954(4) de la Ley de Enjuiciamiento Criminal Española y constituye un reconocimiento del mismo principio que informa el auto de *Coram Nobis* o *Coram Vobis*." Véase: Texto del Informe Rendido al Tribunal Supremo de Puerto Rico proponiendo las Reglas de Procedimiento Criminal. Conferencia Judicial de Puerto Rico. Comité de Procedimiento Criminal, 10 de octubre de 1958.

Mediante el recurso de *Coram Nobis* se puede dejar sin efecto, o modificar, una sentencia dictada en un procedimiento criminal, por razón del surgimiento de hechos no constatables en los autos pero existentes antes de dictarse. Se requiere que, al momento de dictarse la sentencia, no se hayan conocido estos hechos, ni hayan sido descubiertos mediante el ejercicio de razonable diligencia. Correa Negrón v. Pueblo, 104 D.P.R. 286 (1975), a las págs. 292-293; Pueblo v. Cruzado, 74 D.P.R. 934, 939 (1953). Además, el *Coram Nobis* sólo está disponible para revisar errores de hechos cometidos por el tribunal de instancia. No procede para revisar cuestiones de derecho.[9] Correa

---

[9] De forma contraria el auto de habeas corpus no puede ser utilizado para revisar errores de hecho. Moore v. Dempsey, 261 U.S. 86, 87-88 (1923).

Negrón v. Pueblo, ante; Pueblo v. Nazario, 53 D.P.R. 239, 242 (1938).

La normativa federal a esos efectos establece que: "The writ of *Coram Nobis* provides a remedy for those suffering from the collateral consequences of an unconstitutional or unlawful criminal conviction which is based on errors of fact and egregious legal errors, although generally, most errors of law are not reviewable by *Coram Nobis*." 39 Am Jur 2d, Habeas Corpus, sec. 233.

En esencia, el recurso *Coram Nobis*, en unión al recurso de apelación, la moción para que se deje sin efecto la sentencia, y el *habeas corpus*, existen en nuestra jurisdicción como medios para atacar la validez de una sentencia.[10]

Ahora bien, entre el *Coram Nobis* y la Regla 192 existen diferencias. Según nos explica David Rivé Rivera, en su obra Recursos Extraordinarios, 2da ed., Programa de Educación Jurídica Continua  de la facultad de Derecho de la Universidad Interamericana de Puerto Rico, (1996), pág. 195, la Regla 192 permite la concesión de un nuevo juicio cuando los hechos que se han conocido después de la sentencia evidencien la inocencia del acusado. Ésta presupone que el condenado esté cumpliendo una sentencia

---

[10] La Regla 192.1, 34 L.P.R.A. Ap. II, R. 192.1, armoniza estos procedimientos proveyendo para una moción mediante la cual puedan someterse al Tribunal todos los elementos de juicio necesarios para que éste pueda determinar la validez de una convicción.

bajo la jurisdicción del tribunal de tal manera que sea posible la celebración de un nuevo juicio y limita la concesión del mismo a situaciones en que está en controversia la inocencia del convicto. Por otro lado, el recurso de *Coram Nobis* no tiene estas limitaciones toda vez que puede presentarse luego de haberse cumplido la sentencia por cualquier razón que evidencie la nulidad del procedimiento que dio margen a la convicción.[11] Es decir, el recurso de *Coram Nobis* no procede cuando el peticionario se encuentra detenido en virtud de la sentencia cuya validez ataca. *Ibid*, a la pág. 197.

El *Coram Nobis* es un recurso que procede cuando el peticionario ya ha extinguido la condena; la Regla 192 es el remedio adecuado cuando se descubre nueva evidencia que revela la inocencia de un peticionario que está en custodia. Rivé Rivera, *op. cit.*, pág. 198.

Vemos entonces que, según el texto de la Regla 192, el propósito de incorporar la moción de nuevo juicio a nuestro ordenamiento fue esencialmente conceder un remedio similar al *Coram Nobis*, cual es el dejar sin efecto una sentencia dictada en un procedimiento criminal. Es por ello que surge que el fin último de esta disposición lo es la liberalización del derecho a obtener un nuevo juicio, el

---

[11] El propósito que generalmente se tiene para el mismo es el de eliminar los efectos de una sentencia criminal para el futuro del convicto, tales como: incapacidad para ciertos empleos, o consideración como reincidente al momento de ser sentenciado por delitos anteriores. Rivé Rivera, *op. cit.*, pág. 196.

cual procederá en cualquier momento posterior a la fecha en que fue dictada la sentencia, a base de hechos que no surgen de los autos, que existían antes de dictarse la sentencia, y que no eran conocidos por la parte promovente ni por el tribunal, ni podían ser descubiertos por el promovente mediante el ejercicio de razonable diligencia.

B

Tal y como hemos discutido anteriormente, la naturaleza del recurso *Coram Nobis* provee un remedio *post* sentencia como parte del poder inherente de los tribunales de conceder remedios en situaciones que lo ameriten. 39 Am Jur 2d. *Habeas Corpus*, sec. 229.

Ello no obstante, vale la pena destacar que en la jurisdicción federal el referido recurso cayó en desuso a medida en que dicha jurisdicción creó nuevos recursos o procedimientos, como la moción de nuevo juicio basada en el descubrimiento de nueva evidencia --Regla 33 de Procedimiento Criminal Federal-- y el auto de *habeas corpus*.[12] En relación con lo anterior, el Tribunal Supremo

---

[12] Entre los referidos recursos también se encuentra el ataque colateral a la sentencia contemplado en la Sección 2255 del Título 28 del U.S.C.A. Dicha disposición establece que:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

(Continúa . . .)

de los Estados Unidos ha expresado que: "As we noted a few years after enactment of the Federal Rules of Criminal Procedure, it is difficult to conceive of a situation in a federal criminal case today where a writ of *Coram Nobis* would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416 (1996); United States v. Smith*,* 331 U.S. 469, 475, n. 4, (1947). Para que proceda este recurso, será necesario que el peticionario establezca que no tiene otro remedio disponible, que se cometió un error de carácter fundamental y que existe una justificación para no haber buscado previamente un remedio. W.R. LaFave, J.H. Israel y N.J. King, Criminal Procedure, sec. 28.9(a), págs. 130-31; Moore's Federal Practice, Motion Attaching Sentence, 3era ed., Lexis Publishing, 2000, sec. 672.02[2][c], pág. 672-39.

De ese modo, cuando un estatuto atienda una controversia en específico, es ese estatuto y no el recurso de *Coram Nobis* el que lo controla. Pennsylvania Bureau of Correction v. United States Marshals Service, 474 U.S. 34, 43 (1985).

Como consecuencia de lo anterior, el auto de *Coram Nobis* no puede utilizarse como sustituto de una moción de nuevo juicio sustentada en el descubrimiento de nueva evidencia. State v. Cerny, 365 Mo. 732, 286 S.W.2d 804

---

law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(1956). Más aun, el descubrimiento de nueva evidencia, como norma general, no es base para conceder un recurso de *Coram Nobis*. <u>U.S.</u> v. <u>Carter</u>, 319 F. Supp. 702 (1969). [13]

Por razón de lo anteriormente expresado, entendemos procedente analizar el tratamiento de la moción de nuevo juicio en la esfera federal, la cual está codificada en la Regla 33 de Procedimiento Criminal Federal.[14] En atención a la mencionada Regla, la doctrina federal señala unos requisitos que deben ser cumplidos por el promovente para que proceda el nuevo juicio solicitado. Los referidos requisitos son: que la evidencia haya sido descubierta después del juicio; que la misma no pudo ser descubierta antes a pesar de haber mediado diligencia; que la nueva

---

[13] "Newly discovered evidence is not a basis for a grant of a writ of Coram Nobis, unless the evidence is such that it would undermine the prosecution's entire case against the petitioner."

[14] La misma dispone, en síntesis, que:

**(a)** Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

**(b) Time to File.**

**(1) Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
**(2) Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty.

evidencia es material a la controversia y no meramente acumulativa o de impugnación. Además, la nueva evidencia presentada en apoyo a la moción debe ser una cuya naturaleza haga probable un resultado distinto en caso que se concediera el nuevo juicio.[15]

En cuanto a la nueva evidencia presentada en apoyo de una moción bajo la Regla 33, el Tribunal Supremo de los Estados Unidos ha expresado que: "to receive a new trial based on newly discovered evidence, a defendant must demonstrate that the evidence would more likely than not lead to a different outcome". Véase: Boyde v. California, 494 U.S. 370 (1990).

El requisito en cuanto a que la evidencia presentada sea material y no acumulativa está relacionado con el requisito en cuanto a que la evidencia sea de tal naturaleza que, probablemente, produzca la exoneración del convicto. Al hacer el referido examen el tribunal debe evaluar la nueva evidencia, no por sí sola, sino a la luz de toda la evidencia presentada durante el juicio original. La solidez de la evidencia presentada durante el juicio es una consideración importante. Si, al evaluar estos criterios, el tribunal considera que existe probabilidad

---

[15] In order to be entitled to a new trial on the ground of newly discovered evidence, the movant must show that the evidence was discovered after trial, that it could not have been discovered with due diligence prior to the trial, that it is material to the issue and not merely cumulative or impeaching, and that it is of such nature that a different verdict would probably result if a new trial were granted. 66 *Corpus Juris Secundum*, New Trial, Sec. 130.

razonable de una exoneración, el nuevo juicio será concedido. De lo contrario, el mismo será denegado. Wright & Miller, 3 Federal Practice & Procedure, 3d  sec. 557.

Por ello, es claro que no cualquier prueba conduce a la celebración de un nuevo juicio, sino aquella que sea lo suficientemente sólida como para que el juez quede convencido que el resultado del juicio pudiese haber sido distinto. Al hacer dicho ejercicio o determinación, el juez deberá tomar en cuenta toda la evidencia presentada en el juicio. Ello, porque dicha evidencia ya condujo a un veredicto o fallo condenatorio. Si del mismo, el juez considera que la nueva evidencia razonablemente produciría un resultado distinto, deberá conceder un nuevo juicio.

Por otro lado, en ausencia de una indicación clara que la nueva evidencia tendría el efecto de cambiar el resultado del juicio original, el nuevo juicio no será concedido. El peso de demostrar lo anterior recae en el peticionario. Véase: O'Connor v. State, 529 N.E.2d 331 (1988).

Según la normativa federal, los casos que realmente cumplen los requisitos para que proceda la concesión de un nuevo juicio son poco usuales, esto es, excepcionales. Dichas solicitudes son analizadas con desconfianza, son desfavorecidas y la nueva evidencia presentada en apoyo de las mismas es analizada con sospecha. 66 *Corpus Juris Secundum*, ante.

En caso de que exista una controversia sobre la credibilidad de la nueva prueba, el rol del juez es el del juzgador de hechos. En esa medida, su determinación a esos efectos puede ser revisada para establecer la comisión o no de errores. Wright & Miller, *op. cit.*, sec. 557.[16] Además, la moción de nuevo juicio bajo la Regla 33 de Procedimiento Criminal Federal va dirigida a la sana discreción del Tribunal y no será revocada por los tribunales apelativos en ausencia de abuso de discreción. U.S. v. Guthartz, 573 F.2d 225 (5th Cir. 1978).[17]

En fin, la concesión de un nuevo juicio salvaguarda los intereses de la verdad y la justicia y dependerá de los hechos y circunstancias particulares de cada caso, ello en virtud de su naturaleza excepcional.

### III

Examinado el tratamiento de la moción de nuevo juicio en la jurisdicción federal --el cual entendemos es de gran

---

[16] A esos efectos, añaden los referidos autores que el juez puede utilizar los conocimientos adquiridos al presidir el juicio original y, al evaluar la credibilidad de los nuevos testigos, también puede tomar en consideración los récords criminales de las personas que prestaron declaración jurada o que testificaron en la vista para dilucidar la moción de nuevo juicio. Wright & Miller, *op. cit.* sec. 557.

[17] "Motions for a new trial under Fed.R.Crim.P. 33 on the basis of newly discovered evidence bear a heavy burden; it is a rare case where we will reverse the discretionary denial of such a motion by the trial judge who is closest to the case." U.S. v. Adamson, 592 F.d2 907 (5th Cir. 1979).

valor persuasivo a la hora de analizar nuestra propia Regla 192-- examinamos la controversia en el presente caso.

El interés en la finalidad de los procedimientos criminales exige que un acusado presente en un procedimiento de apelación todos los fundamentos para revocar una convicción. Así, se desalienta que un acusado levante dichos fundamentos en procedimientos posteriores colaterales.

En atención a ello, en nuestro ordenamiento procesal --y de forma similar a la esfera federal-- hemos establecido que una moción de nuevo juicio fundada en el descubrimiento de nueva prueba sólo procede cuando esta última: (1) no se pudo descubrir con razonable diligencia antes del juicio; (2) no es meramente acumulativa; (3) no impugna la prueba aducida durante el juicio; (4) es creíble, y (5) probablemente produciría un resultado diferente. Véase: Pueblo v. Chévere Heredia 139 D.P.R. 1 (1995); Pueblo v. Martínez Ortiz, 135 D.P.R. 100 (1994); Pueblo v. Torres Rivera, 129 D.P.R. 331 (1991), y otros. Los anteriores requisitos son igualmente aplicables para una moción de nuevo juicio tanto bajo la Regla 188 como bajo la Regla 192.

Sin embargo, del texto de ambas reglas, en cuanto a lo que éstas requieren para que proceda un nuevo juicio, surgen notables diferencias. Mientras que la Regla 188 requiere que la referida nueva prueba sea una que probablemente habría cambiado el veredicto o fallo del

tribunal, la Regla 192, ciertamente, requiere algo más, cual es que dicha nueva prueba sea una tal que evidencie la posible inocencia del convicto. Otra diferencia entre la Regla 188 y la Regla 192 es que, mientras la primera regula la concesión de un nuevo juicio antes de dictada una sentencia en un proceso penal[18], la segunda contempla la posibilidad que una sentencia que ya advino final y firme sea dejada sin efecto.

Vemos, entonces, que la Regla 192, repetimos, es de naturaleza excepcional, pues su propósito es la revocación de sentencias finales y firmes y por hechos que tiendan a demostrar la inocencia del acusado. En consecuencia, la moción de nuevo juicio al amparo de la Regla 192 de Procedimiento Criminal exige que los tribunales requieran un grado mayor de prueba que el requerido bajo la Regla 188.

Ahora bien, en la Opinión que se solicita reconsideremos se estableció, como requisito, que dicho grado mayor de prueba debe ser uno tal que "de forma exacta y certera demuestre la inocencia del acusado". Luego de examinar los planteamientos esbozados en la moción de reconsideración, concluimos que resulta muy oneroso requerirle a un convicto que cumpla con dicho estándar de prueba para que se le conceda un nuevo juicio bajo la Regla 192. De hecho, somos del criterio que la aplicación del

---

[18] Esto es, que la misma debe presentarse en cualquier momento antes de dictarse la sentencia.

referido estándar realmente haría innecesaria la celebración del nuevo juicio solicitado ya que lo que procedería, de cumplirse con el mismo, sería la anulación de la sentencia y la absolución del convicto, sin necesidad de ulterior trámite. Por estas razones entendemos que <u>no debe ni puede exigirse a quien solicita el remedio post sentencia provisto por la Regla 192 que evidencie su inocencia de forma exacta, certera e incontrovertible.</u>

En vista de lo anteriormente expresado, <u>reconsideramos la norma establecida en la Opinión emitida el 22 de noviembre de 2000</u>. Tomando en consideración que el fin último de la Regla 192 es, precisamente, la concesión de un nuevo juicio, <u>resolvemos que un nuevo juicio bajo dicha Regla resulta procedente si, analizando la nueva evidencia junto a la presentada en el juicio original de la forma más favorable al fallo o veredicto de culpabilidad que se impugna, la misma pudo haber creado duda razonable en el ánimo del juzgador, en cuanto a la culpabilidad del peticionario. Esto es, la nueva prueba debe demostrar que es más probable que el convicto sea inocente a que sea culpable</u>.

IV

Establecido el quantum de prueba requerido, examinamos si el peticionario, Marcano Parrilla presentó --en apoyo de la moción de nuevo juicio que radicara al amparo de la Regla 192-- prueba que pudo haber creado duda razonable en

el ánimo del jurado en cuanto a su culpabilidad por los hechos que se le imputan.

Al hacer el referido análisis, debemos tener presente que los mecanismos de las Reglas 188, 192 y 192.1 de Procedimiento Criminal --en lo referente a nueva prueba exculpatoria-- necesariamente parten del supuesto de que el convicto actuó diligentemente para descubrirla; de que la misma no estuvo accesible antes, y de que no es responsable de esa indisponibilidad. Pueblo v. González Barreto, 106 D.P.R. 152 (1977); Correa Negrón v. Pueblo, ante.

Además, debemos mantener presente que la concesión de un nuevo juicio descansa en la sana discreción del tribunal sentenciador, y dicha determinación merece deferencia, mientras no se demuestre un claro abuso de discreción. Pueblo v. Chévere Heredia, ante; U.S. v. Guthartz, ante.

En la moción de nuevo juicio presentada ante el foro primario, Marcano Parrilla alegó que descubrió nueva prueba que demostraba que fue un tal Ángel E. Orta Fernández y no él, quien dio muerte al occiso, Víctor Manuel Pérez Ortiz. En la vista celebrada para dilucidar la moción de nuevo juicio, la defensa presentó como nuevos testigos al señor Marcos Roldán Castro, alegado testigo ocular de los hechos, y a la señora Irma Elisa Orta Fernández, hermana de quien la defensa alega fue el verdadero asesino.

El testimonio de Roldán Castro, en síntesis, fue a los efectos de que el día de los hechos fueron a buscarlo Omar, Joaquín Lasalle (testigo de cargo) y Víctor Manuel Pérez

Ortiz (el occiso); para buscar al peticionario, Marcano Parrilla y hablar con él. Joaquín y Víctor se fueron en un carro, mientras que Roldán Castro y Omar se fueron en otro. A eso de las 8:00 p.m. llegaron al Residencial de Jardines de Condado en Caguas a buscar a Marcano Parrilla. Víctor y Joaquín llegaron al residencial y se estacionaron. En ese momento, Orta Fernández llegó, se acercó al carro y le indicó a Víctor que era un "mamabicho". Roldán Castro describió a Orta Fernández como un hombre alto, cabezón y de color oscuro. También manifestó que en el momento de prestarse el testimonio, Orta Fernández había fallecido. Luego de proferirle el insulto a Víctor, Orta Fernández le hizo un disparo. Joaquín salió corriendo y Roldán Castro partió hacia Aguadilla. Roldán Castro alegó, además, que en el lugar sólo estaban el tal Orta Fernández y tres individuos más, y que no vio a Marcano Parrilla en el lugar.[19]

Por su parte, Irma Elisa Orta Fernández declaró, en síntesis, que vivía en el residencial Jardines de Condado y que la noche de los hechos salió a buscar a su hermano, Ángel E. Orta Fernández, porque había rumores de un tiroteo. Junto a su hermano, reconoció a otros individuos

---

[19] Roldán añadió al testimonio reseñado anteriormente que conocía a Marcano Parrilla aproximadamente tres años antes de los hechos pero que no eran amigos y que decidió cooperar para la defensa del peticionario porque quería justicia para él. Que anterior a su testimonio en la vista, ningún agente de la policía y ningún abogado lo habían entrevistado sobre los hechos por él relatados.

que estaban con él. Luego vio un auto pequeño, oyó ráfagas de tiros, y se echó a correr. Ésta no se quedó para ver lo que ocurría. Al rato, Irma Elisa volvió al lugar donde se encontraba el carro y vio el cuerpo sin vida de Víctor, a quien sólo conocía de nombre. También vio a otra persona que parecía muerta pero que empezó a quejarse y a quien los policías se llevaron en una Montero. No vio a nadie corriendo hacia ningún lado. Declaró además que en el lugar de los hechos no había mucha luz pero que reconoció a su hermano y a los que estaban con él y que entre ellos, no vio a Marcano Parrilla.[20]

Analizada la referida prueba el foro primario concluyó, en primer lugar, que Marcano Parrilla pudo haber obtenido la nueva prueba para presentarla en el juicio, es decir, las declaraciones de los nuevos testigos, si hubiera actuado de forma diligente. Por esta razón, según el mencionado foro, Marcano Parrilla, de entrada, no cumplía con uno de los requisitos para que procediese su moción de nuevo juicio.[21]

En segundo lugar, y en lo que respecta al *quantum* de la nueva prueba, el referido foro determinó que, al ser ésta una contradictoria con el testimonio del testigo de

---

[20] Además de lo anterior, Irma Elisa Orta Fernández declaró que no había declarado antes a favor de Marcano Parrilla porque no se enteró del juicio en su contra ya que ella no leía periódicos ni veía televisión.

[21] Resulta, cuando menos curioso, que estos nuevos testigos aparecieran justo después de que el alegado asesino, Ángel E. Orta Fernández, hubiera fallecido.

cargo, Joaquín Lasalle, el cual fue presentado ante el jurado, la misma debía ser examinada con suma cautela y reserva. Así, el foro primario procedió a analizar la prueba ventilada en el juicio, constituida en esencia por el testimonio de Joaquín Lasalle. Dicho testigo testificó que había llegado al lugar de los hechos junto a Víctor Manuel Pérez Ortiz, que vio el carro donde se transportaban Roldán Castro y otro individuo, que se les acercó un individuo al que identificó como Marcano Parrilla, quien le profirió varios disparos a Pérez Ortiz. Luego, Lasalle corrió herido hacia la parte de atrás del residencial y allí permaneció escondido hasta el otro día.

El tribunal de instancia determinó que el testimonio ofrecido por Lasalle, aun cuando hubo algunas lagunas en el mismo, había pasado el "crisol de la admisibilidad" en el juicio original, mereció entera credibilidad del jurado que estuvo presente en el juicio y resultó ser suficiente para la convicción; añadió que dicho testimonio fue corroborado por una patóloga y dos agentes del orden público. Por consiguiente, según el tribunal de instancia, dicha prueba no había confrontado un serio problema de credibilidad.[22]

Al comparar la prueba ofrecida en el juicio original con la prueba ofrecida en apoyo a la moción de nuevo

---

[22] Sobre este particular, es menester señalar que, en apelación de la sentencia en el juicio original, el Tribunal de Apelaciones sostuvo que la prueba presentada por el Ministerio Fiscal fue una suficiente para sostener una convicción.

juicio, el referido foro resolvió que esta última no era una tal cuyo peso rebatiera la primera, y que acreditara la probabilidad de poder celebrarse un nuevo juicio. En otras palabras, que la nueva prueba ofrecida por Marcano Parrilla no disminuyó el valor probatorio de la presentada por el Ministerio Fiscal durante el juicio y por lo tanto no creaba duda razonable en cuanto a su culpabilidad. Por consiguiente, el tribunal de instancia denegó la moción de nuevo juicio. Al así actuar, expresó que dicha acción no socavaba resultado alguno de un juicio que a todas luces le garantizó todos los derechos del peticionario. Somos del criterio que, la actuación del foro primario fue una correcta en derecho y por lo tanto, merece deferencia.

A Marcano Parrilla, ciertamente, no le favorece la determinación a los efectos de que el procedimiento criminal llevado a cabo en su contra fue uno justo. Con miras a proteger el principio de finalidad de los procedimientos penales, para que procediera la concesión de un nuevo juicio en el presente caso, la nueva evidencia presentada --en comparación con la vertida en el juicio original-- tenía que ser una de tal magnitud que, de haber sido presentada en el juicio, hubiera demostrado que es más probable que Marcano Parrilla fuera inocente que culpable. No tenemos duda de que éste no cumplió con el referido estándar.

En virtud de ello, se reconsidera el estándar de prueba "exacta y certera" establecido en la Opinión emitida

el 22 de noviembre de 2000, y se <u>reitera</u> el resultado en cuanto a la denegatoria de la concesión de nuevo juicio.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.               CC-1999-178      CERTIORARI

Jorge Marcano Parrilla

    Peticionario

SENTENCIA
(En reconsideración)

San Juan, Puerto Rico, a 28 de agosto de 2006

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual forma parte íntegra de esta Sentencia, se reconsidera el estándar de prueba "exacta y certera" establecido en la Opinión emitida el 22 de noviembre de 2000 en el presente caso, y se reitera el resultado en cuanto a la denegatoria de la concesión de nuevo juicio.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió Opinión de Conformidad. La Juez Asociada señora Rodríguez Rodríguez disintió sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Recurrido

       v.                     CC-1999-178     Certiorari

Jorge Marcano Parrilla

    Peticionario


Opinión de Conformidad emitida por el Juez Presidente señor Hernández Denton


San Juan, Puerto Rico a 28 de agosto de 2006.

Hemos decidido emitir la siguiente Opinión de Conformidad teniendo en mente que una de las funciones de este Tribunal es desarrollar el derecho de forma certera, predecible y consistente. Sin embargo, entendemos que esta Curia también tiene la obligación de modificar sus decisiones cuando ello sea imprescindible para la consecución de la justicia. Esto se debe a que la dinámica deliberativa que caracteriza a los foros adjudicativos colegiados exige que estemos receptivos a la posibilidad de rectificar nuestras pasadas actuaciones. Después de todo, como acertadamente expresó una vez el Juez Robert

Jackson, los jueces del Tribunal Supremo no tenemos la última palabra porque somos infalibles, sino que somos "infalibles" solamente porque tenemos la última palabra. <u>Brown v. Allen</u>, 344 U.S. 443 (1953) (Op. Concurrente del Juez Robert Jackson).

Tomando en consideración lo anterior, y luego de examinar los ponderados argumentos esbozados en la Opinión *Per Curiam* y en la moción de reconsideración presentada por el peticionario, estamos conformes con la decisión que hoy emite este Tribunal modificando la norma establecida en <u>Pueblo v. Marcano Parrilla</u>, *supra*. No obstante, hemos decidido escribir separadamente para exponer con más detalle las razones que nos han llevado a concluir que existen ocasiones en que debe concederse una petición de nuevo juicio presentada al amparo de la Regla 192 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 134, aunque el convicto no haya evidenciado con absoluta certeza su inocencia.

I.

La moción solicitando nuevo juicio bajo la Regla 192 puede presentarse luego de que la sentencia impugnada haya advenido final y firme. Como consecuencia de ello, la concesión de este remedio es contrario a la doctrina de cosa juzgada pues tiene el efecto de reabrir un pleito criminal que ya había sido resuelto de forma final.

Sin embargo, los principios de deferencia y de finalidad que subyacen a la doctrina de cosa juzgada ceden en circunstancias extraordinarias ante la necesidad de corregir

una convicción fundamentalmente injusta. *Véase a* <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). De conformidad con esto, un tribunal debe decretar la celebración de un nuevo juicio cuando existe una probabilidad real de que un juzgador hubiese tenido duda razonable en cuanto a la culpabilidad del convicto. Al realizar dicha determinación, es necesario analizar tanto la totalidad de la evidencia admitida en el juicio como cualquier prueba que se haya obtenido con posterioridad a la convicción que no podía razonablemente obtenerse durante la celebración del proceso original. <u>Kuhlman v. Wilson</u>, 477 U.S. 436 (1986).

De otra parte, el *quántum* de prueba requerido para la concesión de una solicitud de nuevo juicio al amparo de la Regla 192 es distinto al exigido para la concesión de dicha solicitud bajo la Regla 188 de Procedimiento Criminal. Bajo la Regla 188, la solicitud se hace antes de que el proceso original haya advenido final y firme. Sin embargo, mediante la Regla 192 se puede controvertir una sentencia ya recaída. En atención a ello, es necesario requerir un grado de certeza mayor al exigido bajo la Regla 188 para lograr la concesión de una solicitud de nuevo juicio al amparo de la Regla 192.

Para que se ordene la celebración de un nuevo proceso en virtud de la Regla 192 no basta con que el peticionario demuestre meramente que existe una probabilidad de que fue convicto erróneamente. La nueva evidencia presentada debe tender a demostrar que hay una probabilidad razonable de que el resultado del nuevo juicio sea distinto al del original.

*Véase, en general,* a Charles H. Whitebread & Christopher Slobogin, Criminal Procedure: An Analysis of Cases and Concepts § 33.03(f).

La razonabilidad de la creencia acerca de que el resultado del nuevo proceso será distinto al del primero depende de un análisis de dos criterios, a saber: (1) que a base de la prueba no presentada en el proceso original, es más probable que el convicto sea inocente a que sea culpable, y (2) que, luego de tomar en consideración la referida evidencia, ningún juzgador razonable hubiera encontrado culpable al acusado. *Véase a* Schlup v. Delo, 513 U.S. 298 (1995).

Mediante el primero de los criterios se pretende limitar la concesión de un nuevo juicio a aquellos casos en donde existe una probabilidad no especulativa de que el nuevo proceso arroje un resultado distinto al original. Solamente de esta forma pueden salvaguardarse adecuadamente los limitados recursos con los que cuenta la Rama Judicial.

El segundo de los criterios, por su parte, promueve que se le confiera la adecuada deferencia a los dictámenes finales emitidos en procesos anteriores. La relitigación de un proceso criminal solamente se justifica cuando, luego de evaluada la prueba que no se pudo presentar en el juicio original, el dictamen emitido en dicho proceso aparece como uno irrazonable. *Id.*

II.

Al considerar originalmente este caso, resolvimos que solamente procede conceder una moción solicitando nuevo juicio después de que la sentencia poniéndole fin al proceso original ha advenido final y firme cuando el convicto demuestre su inocencia mediante prueba **exacta y certera**. <u>Pueblo v. Marcano Parrilla</u>, *supra*. Establecimos, además, que dicha prueba debía reflejar la inocencia del acusado de manera tan clara que la continuación de su encarcelamiento ofenda el sentido de la justicia. *Id.*

En retrospección, y con el beneficio de los fundamentos expuestos en la moción de reconsideración, entendemos que dicha norma es demasiado restrictiva. Si bien es cierto que las sentencias finales en los procesos penales merecen gran deferencia y no deben ser relitigadas salvo en situaciones excepcionales, ello no puede ser óbice para que los tribunales corrijan un error mediante el cual una persona inocente fue injustamente convicta de un delito.

En consideración a esto, somos del criterio de que existen ocasiones en que debe concederse la solicitud de nuevo juicio aunque el peticionario no haya demostrado con total y absoluta certeza su inocencia. Por consiguiente, entendemos que la norma que esbozamos en <u>Pueblo v. Marcano Parrilla</u>, *supra*, debe ser modificada. Ello no quiere decir, sin embargo, que basta con que el convicto presente cualquier prueba exculpante no presentada en el primer proceso para que proceda el remedio provisto por esta regla.

Como explicamos anteriormente, no basta con que el convicto demuestre que advino en conocimiento de cierta evidencia que pudiera variar el resultado del juicio original para que se ordene la celebración de un nuevo juicio bajo la Regla 192. Es necesario, además, que éste pruebe que dicha evidencia tiende a demostrar que es más probable que en el nuevo proceso se emita un fallo o veredicto absolutorio a que sea uno de culpabilidad. Por último, debe evidenciar que el dictamen originalmente emitido resulta irrazonable a la luz de la nueva evidencia obtenida.

Entendemos que mediante la adopción de un estándar como éste se logra armonizar el interés estatal de no relitigar asuntos resueltos de forma final y firme con el derecho fundamental del individuo de no ser encarcelado por un delito que no cometió. En vista de que consideramos que la modificación que se le hace hoy a la norma originalmente pautada en Pueblo v. Marcano Parrilla, *supra*, es cónsona con lo anterior, estamos conformes con los pronunciamientos emitidos por la Opinión del Tribunal en el presente caso.

Además, coincidimos con la Opinión del Tribunal de que en este caso la prueba presentada por Marcano Parrilla en apoyo a la moción de nuevo juicio no demostró que es más probable que en el nuevo proceso se emita un fallo o veredicto absolutorio a que se emita uno de culpabilidad. El dictamen originalmente emitido por el foro de instancia no es irrazonable a la luz de la prueba presentada en su solicitud de nuevo juicio. Por ende, según concluimos en Pueblo v. Marcano Parrilla la decisión del

Tribunal de Primera Instancia en la que se denegó la moción de nuevo juicio al amparo de la Regla 192 de las Reglas de Procedimiento Criminal debe ser confirmada.


                              Federico Hernández Denton
                                   Juez Presidente